# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WASHINGTON, | ) | CASE NO. 1:20-CV-01468-BMB |
| Petitioner, | ) | |
| | ) | JUDGE BRIDGET MEEHAN |
| v. | ) | BRENNAN |
| | ) | |
| WARDEN KIMBERLY CLIPPER, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| Respondent, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Petitioner James Washington ("Mr. Washington") seeks a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF Doc. 1). Mr. Washington, an Ohio inmate, is currently serving an 11-year sentence for possession of drugs, with a major drug offender specification, at the Lorain Correctional Institution. Respondent Warden Kimberly Clipper[1] ("Respondent") filed a Return of Writ. (ECF Doc. 5). Mr. Washington filed a Traverse. (ECF Doc.6). This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation of Mr. Washington's petition and other case-dispositive motions. For the reasons set forth below, I RECOMMEND the Court DISMISS and/or DENY Mr. Washington's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of Appealability.

---

[1] Kimberly Clipper was warden of Lorain Correctional Institution when Mr. Washington filed his petition, and Jennifer Black is now warden. *See* https://drc.ohio.gov/about/facilities/lorain-correctional (last visited May 8, 2023). Warden Jennifer Black should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

1

I also RECOMMEND that Jennifer Black, the current Warden of Lorain Correctional Institution—where Mr. Washington is currently incarcerated—should be substituted for Kimberly Clipper as the Respondent in this case.

## II.     RELEVANT FACTUAL BACKGROUND

In a habeas proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); ); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Ninth District set forth the following facts on direct appeal:

> {¶2} When the United States Postal Service discovered a package that contained drugs, it contacted the Lorain Police Department to coordinate a controlled delivery. Mr. Washington received and signed for the package, which was addressed to "A. Lee[.]" He opened the package a few minutes later, which the postal service detected from a device it had placed in the package. After Mr. Washington opened the package, law enforcement conducted a search of the residence. Officers found the package in a bathtub. It contained a zip lock bag that held two smaller zip lock bags. Each of the smaller bags contained two tubes of a white powdery substance that tested positive for cocaine. The tubes were wrapped in green leaves. The smaller bags also contained a spicy, mustardy liquid, assumedly to mask the odor of the cocaine.
>
> {¶3} The Grand Jury indicted Mr. Washington for trafficking in drugs, possession of drugs, and drug paraphernalia offenses. The trafficking and possession charges included major drug offender specifications. Following a trial to the bench, the court found Mr. Washington guilty of possession of drugs and the major drug offender specification associated with that offense. It found him not guilty of the other offenses. The court sentenced him to 11 years in prison. Mr. Washington has appealed, assigning as error that his conviction is against the manifest weight of the evidence.

*State v. Washington*, 2018-Ohio-5271, at ¶¶2-3.

## III.     RELEVANT STATE PROCEDURAL HISTORY

### A.  *State Conviction*

On May 24, 2012, a Lorain County Grand Jury indicted Mr. Washington, charging him with: (1) Trafficking in Drugs, in violation of R.C. § 2925.03(A)(2), with major drug offender and

forfeiture specifications; (2) Possession of Drugs, in violation of R.C. § 2925.11(A), with a major drug offender specification; and (3) Drug Paraphernalia Offenses, in violation of R.C. § 2925.14(C)(1). (ECF Doc. 5-2, PageID#78-79). Mr. Washington, through counsel, pleaded not guilty to all charges. (*Id.* at PageID#80).

On October 25, 2017, a jury found Mr. Washington guilty of Possession of Drugs and the major drug offender specification associated with that offense, but not guilty of the other offenses. (*Id.* at PageID#107).  At trial, Mr. Washington moved for acquittal, pursuant to Ohio R. Crim. P. 29, for the major drug offender specifications and the forfeiture specification. (*See id.* at PageID#106). The trial court denied his motions with respect to the major drug offender specifications but granted it with respect to the forfeiture specification. (*Id.*). Mr. Washington filed a subsequent motion to vacate the major drug offender specification, arguing that his major drug offender specification verdict was not supported by sufficient evidence under Ohio R. Crim. P. 29 and 33. (*Id.* at PageID109-110). The trial court denied this motion. (*Id.* at PageID#124). On December 13, 2017, the court sentenced Mr. Washington 11 years in prison for Possession of Drugs. (*Id.* at PageID#125).

### B. *Direct Appeal*

On June 7, 2019, Mr. Washington, represented by the same counsel who defended him at trial, filed a timely appeal of his conviction and sentence to the Ohio Court of Appeals for the Ninth District. (*Id.* at PageID#130-62). He raised the following single assignment of error:

(1) Appellant's conviction was against the manifest weight of the evidence.

(*Id.* at PageID#133). The State opposed this appeal. (*Id.* at PageID#163-78). The Ohio Court of Appeals affirmed the trial court's judgment. *Washington*, 2018-Ohio-5271; (ECF Doc. 5-2, PageID#187-91).

3

Mr. Washington, through the assistance of the same counsel, appealed this decision to the Ohio Supreme Court, asserting the following proposition of law:

> (1) Appellant's Conviction as a Major Drug Offender was against The Manifest Weight of the Evidence in Violation of Article IV, Section 3 of the Ohio Constitution.

(ECF Doc. 5-2, PageID#196). On April 3, 2019, the Ohio Supreme Court declined jurisdiction. (*Id.* at PageID#213).

### C.  *Post-Conviction Petition*

On May 22, 2019, Mr. Washington, through new counsel, filed a petition for post-conviction relief, asserting two claims of ineffective assistance of counsel: (1) that trial counsel failed to investigate the IP address used to track the cocaine package; and (2) that trial counsel failed to independently test the package for cocaine. (*Id.* at PageID#216-18). On August 27, 2019, the Lorain County Court of Common Pleas denied Mr. Washington's petition as untimely. (*Id.* at PageID#231). Mr. Washington filed a motion to reconsider (*id.* at PageID#232-34), but the trial court denied this request. (*Id.* at PageID#240). Mr. Washington did not appeal this decision to the Ohio Court of Appeals.

### D.  *Delayed Application for Reopening Appeal*

On June 29, 2020, Mr. Washington, through current habeas counsel, filed a delayed 26(B) applications. (ECF Doc. 5-2, PageID#241). He asserted the following ineffective assistance of counsel claims:

1. Appellant was denied the effective assistance of counsel when appellant's counsel was the same for both the trial and initial appeal but where appellant was never advised of hiring new counsel for appellate purposes.

2. Appellant was denied the effective assistance of counsel guar[a]nteed by the state and federal constitutions when his attorney failed to argue on appeal that the evidence was insufficient to sustain a felony on the first degree.

4

3. Appellant was denied effective assistance of counsel when his appellate attorney failed to challenge the state's improper vouching.

(*Id.* at PageID#244-47). Mr. Washington then re-filed his 26(B) application, supplemented by his own affidavit and the affidavit of the counsel representing him in the 26(B) proceedings. (*Id.* at PageID#250-60). The State opposed the reopening of the appeal on the grounds that the application was untimely, and Mr. Washington failed to demonstrate cause for the untimely application. (*Id.* at PageID#261-65).

On October 8, 2020, the Ohio Court of Appeals denied the application as untimely and rejected Mr. Washington's claim that he could demonstrate cause for his untimeliness. (*Id.* at PageID#267-68). The appellate court rejected Mr. Washington's argument that his appellate counsel's failure to inform him of the deadline for filing his application constituted an excuse for his untimely application because Mr. Washington failed to cite any authority to support an argument that appellate counsel had such a duty. (*Id.*). The court further noted that Mr. Washington failed to establish when he discovered the 26(B) remedy  that he acted diligently thereafter to pursue relief. (*Id.* at PageID#268). Mr. Washington did not appeal this decision to the Ohio Supreme Court.

### E.  *Application for Reconsideration*

On November 3, 2020, Mr. Washington, *pro se*, filed a Motion for Reconsideration in the Ohio Court of Appeals regarding the appellate court's decision on his delayed 26(B) application. (*Id.* at PageID#269-77). On January 11, 2021, the appellate court denied the motion. (*Id.* at PageID#306-07).

### IV.  FEDERAL HABEAS PETITION

On July 2, 2020, Mr. Washington, through counsel, filed the instant petition for writ of habeas corpus asserting the following grounds for relief:

**GROUND ONE:** Evidence was insufficient to establish knowing possession.

**GROUND TWO:** Petitioner was denied effective assistance of counsel in violation of federal constitutional rights where appellant was never advised of hiring new counsel.

**GROUND THREE:** Petitioner's conviction and sentence is not supported where the state failed to establish the weight of the substance, artificially enhancing petitioner's conviction and sentence.

**GROUND FOUR:** Petitioner's constitutional rights were violated by the government's improper vouching.

(ECF Doc. 1-1, PageID#19-24).

## V.    LEGAL STANDARDS

### A.  *Jurisdiction*

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Court of Common Pleas of Lorain County sentenced Mr. Washington, and the Court takes judicial notice that Lorain County is within this Court's geographic jurisdiction. (ECF Doc. 5-2, PageID#125) Accordingly, this Court has jurisdiction over Mr. Washington's § 2254 petition.

### B.  *AEDPA Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Gordon's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997);

6

*Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings,

as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White,* 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, quoting *Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

## C.  *Exhaustion and Procedural Default*

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); see also Rose v. Lundy, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*,

526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner has a sufficient basis for having the default excused, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A claim may become procedurally defaulted in two ways." *Williams*, 460 F.3d at 806. "First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted." *Id*. "Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'" *Id*. (quoting *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst*., 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### D.  Cognizable Federal Claim

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen*, 845 F.2d at 614 (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

VI.    ANALYSIS

Mr. Washington raises four grounds for relief in his habeas petition: (1) there was insufficient evidence to support his possession of drugs conviction (Ground One); (2) he received ineffective assistance of counsel because his direct appellate counsel (who was also his trial counsel) failed to advise him that he could retain new counsel for direct appeal and failed to obtain a waiver (Ground Two); (3) there was insufficient evidence supporting his major drug offender specification conviction (Ground Three); and (4) the state improperly vouched for one of its witnesses (Ground Four). (ECF Doc. 1-1, PageID#19-25). To assist with logical flow, this Report and Recommendation will address these grounds in the following order: (1) Grounds One and Three; (2) Ground Four; and (3) Ground Two. For the reasons set forth below, I find that all of Mr. Washington's claims are noncognizable and/or meritless.

A.  *Grounds One and Three (Sufficiency of the Evidence Claims)*

Mr. Washington's Ground One and Ground Three claims allege that his conviction is in violation of his due process rights because it is not supported by sufficient evidence.  Thus, this Report and Recommendation will address both claims together. For the following reasons, both claims lack merit.

1.  <u>Cognizability – Manifest Weight of the Evidence</u>

In Mr. Washington's direct appeal, he argued that his convictions for possession of drugs and its related major drug offender specification were against the manifest weight of the evidence. (ECF Doc. 5-2, PageID#147-51). To the extent both grounds for relief could be construed as a challenge to the manifest weight of the evidence (*see* ECF Doc. 1-1, PageID#21), as Respondent asserts, such claims are not cognizable on federal habeas review. (ECF Doc. 5, PageID#49). An argument that a conviction was against the manifest weight of evidence is a *state law* argument.

12

*See Gibson v. Miller*, No. 5:15-cv-119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193, at *8 (6th Cir. 2007) ("A manifest-weight-of-the-evidence claim in Ohio is a state-law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").

Under Ohio law, an argument that a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 20900093, at *6 (S.D. Ohio Jan. 17, 2006) (citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1983)). Because a federal district court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, a court cannot consider whether Mr. Washington's conviction was against the manifest weight of the evidence. Accordingly, I recommend that the portion of Mr. Washington's Ground One and Ground Three claims asserting a manifest weight challenge be dismissed as not cognizable.

### 2.  Procedural Default (Grounds One and Three)

#### a.  Parties' Arguments

Respondent contends that Mr. Washington's Ground One claim regarding whether there is sufficient evidence to support his conviction for possession of cocaine is procedurally defaulted. (ECF Doc. 5, PageID#47-49). Although Mr. Washington challenged his possession charge (Mr. Washington's Ground One claim) on direct appeal to the Ohio Court of Appeals, Respondent

13

asserts that Mr. Washington abandoned this claim by not pursuing it in a further appeal to the Ohio Supreme Court. (*Id.* at PageID#47). Rather, Respondent argues that Mr. Washington's claim to the Ohio Supreme Court focused solely on the major drug offender specification challenge (Mr. Washington's Ground Three claim). (*Id.*). Thus, Respondent states that the possession challenge is waived unless Mr. Washington demonstrates cause or actual innocence. (*Id.* at PageID#47-48). Respondent contends that Mr. Washington does not meet his burden of showing cause through ineffectiveness of appellate counsel because he does not have a Sixth Amendment right to counsel on a discretionary appeal to the Ohio Supreme Court. (*Id.* at PageID#48). Further, Respondent asserts that Mr. Washington does not establish actual innocence to overcome procedural default. (*Id.* at PageID#49). Accordingly, Respondent concludes that Mr. Washington waived his Ground One claim. (*Id.*).

In his Traverse, Mr. Washington alleges that he has cause to excuse procedural default (*i.e.*, ineffective assistance of counsel). (ECF Doc. 6, PageID#558). Specifically, he maintains that but for trial counsel and post-conviction counsel's ineffectiveness in failing to advise him of the time limit to present a collateral attack on the assistance of counsel, his claims would have been properly presented to Ohio state courts. (*Id.* at PageID#558-59). Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Mr. Washington contends that this failure denied him effective representation at his initial-review collateral proceedings (*see id.* at PageID#559) because his filing was deemed untimely by the Ohio courts. (*Id.* at PageID#559-60). Thus, Mr. Washington argues that his post-conviction counsel's failure to present necessary claims in his post-conviction petition amount to ineffective assistance of counsel, which would be sufficient cause for procedural default. (*Id.* at PageID#560).

**b. Analysis**

14

Because the parties do not dispute that Mr. Washington procedurally defaulted Grounds One and Three, the issue here is whether Mr. Washington demonstrates sufficient cause to excuse this default. As summarized above, Mr. Washington alleges that *Martinez v. Ryan* is applicable because his appellate counsel (the same counsel that represented him during trial) failed to advise him of the time limit for presenting a collateral attack on effective assistance of counsel. (ECF Doc. 6, PageId#559-60). In *Martinez v. Ryan*, the Supreme Court considered "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." 566 U.S. 1, 9 (2012). The *Martinez* Court recognized that it previously held in *Coleman v. Thompson*, 501 U.S. 722 (1991), that "an attorney's negligence in a post-conviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 9. The Court in *Martinez*, however, "qualifies *Coleman* by recognizing a narrow exception:  Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural fault of a claim of ineffective assistance of counsel." *Id.*

In creating this narrow exception to *Coleman*, the *Martinez* Court explained that "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 14. The Court in *Martinez*, however, noted that "the rule of *Coleman* governs in all but the limited circumstances recognized here." *Id.* at 16.

Mr. Washington demonstrates sufficient cause to excuse his procedural default. The initial-review collateral proceedings would have been the first designated proceeding for him to raise his claims of ineffective assistance at trial. Further, the Sixth Circuit has held that an attorney's failure to provide his client with relevant information regarding the filing of a petition for post-conviction

15

relief may constitute cause for a petitioner's failure to pursue a timely post-conviction petition. *Gunner v. Welch*, 749 F. 3d 511, 516-17 (6th Cir. 2014). Like *Gunner*, Mr. Washington alleges that his appellate counsel (who was also his trial counsel) failed to advise him of the timing deadline to file his post-conviction petition. And under *Martinez,* an appellate attorney's failure to notify his client of this fact can be potentially considered as excusing cause for a procedural default. Mr. Washington attempted to utilize the appropriate avenue for asserting ineffective assistance of appellate counsel, a 26(B) application, but his application was deemed untimely. Because Mr. Washington demonstrates sufficient cause for his procedural default of Grounds One and Three, I proceed to the merits of these sufficiency of the evidence claims.

### 3.  Sufficiency of the Evidence Standard of Review

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Jackson*, 443 U.S. 309, 321 (1983). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

On habeas review, this question involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). First, the court "must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App. 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on

16

habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir.2009)).  Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

### 4.  Ground One – Sufficiency of the Evidence (Possession of Drugs)

Mr. Washington asserts in his first ground for relief that the evidence was insufficient to establish that he had knowing possession of drugs. (ECF Doc. 1-1, PageID#19-21). Specifically, he argues that the only evidence supporting his conviction under R.C. § 2925.11(A) is that law enforcement testified that his shirt was wet, despite law enforcement's failure to include this fact in their report following the search. (*Id.* at PageID#19-20). Law enforcement's inconsistent and incredible testimony, according to Mr. Washington, fails to establish possession. (*Id.* at PageID#20). Mr. Washington further asserts that the package he received was addressed to his aunt and delivered to his aunt's home which "was littered with crack pipes and had received other drug shipments." (*Id.*). Thus, he contends that he was deprived of due process because the State did not establish the elements of knowing possession. (*Id.* at PageID#20-21). For the following reasons, this argument fails.

### a.  Ohio Court of Appeals' Findings

The Ohio Court of Appeals rejected the arguments Mr. Washington now raises in his habeas petition, explaining its reasoning as follows:

> {¶2} When the United States Postal Service discovered a package that contained drugs, it contacted the Lorain Police Department to coordinate a controlled delivery. Mr. Washington received and signed for the package, which was addressed to "A. Lee[.]" He opened the package a few minutes later, which the postal service detected from a device it had placed in the package. After Mr. Washington opened the package, law enforcement conducted a search of the

residence. Officers found the package in a bathtub. It contained a zip lock bag that held two smaller zip lock bags. Each of the smaller bags contained two tubes of a white powdery substance that tested positive for cocaine. The tubes were wrapped in green leaves. The smaller bags also contained a spicy, mustardy liquid, assumedly to mask the odor of the cocaine.[2]

…

{¶4} Mr. Washington argues that his conviction for possession of drugs is against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶5} Mr. Washington argues that he did not knowingly obtain, possess, or use the cocaine that was in the package. He contends that he received the package at his aunt's house as a favor to her and put it in the bathtub to open it because it appeared to be leaking. He notes that, although postal inspectors testified that Mr. Washington's hands were wet when they executed the search warrant, the detail was not included in the report prepared following the search. Mr. Washington notes that other law enforcement officers who were involved in the search did not recall him being wet. He also notes that his aunt admitted that she was a long-term drug user and that she did not want to lose her job from being charged with a felony. He further notes that he signed his own name when he received the package, which a postal inspector testified is not normal for someone receiving a shipment of drugs.

{¶6} The trial court found Mr. Washington guilty of possession of drugs, in violation of Revised Code Section 2925.11(A). That section provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Possess" means "having

---

[2] These facts are presumed to be correct, and Mr. Washington has not rebutted that presumption. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

control over a thing or substance ...." R.C. 2925.01(K). It may be actual or constructive. *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist.1991).

{¶7} The alleged testimony that Mr. Washington points to for the reason the package was in the bathtub was actually from his counsel's opening statement, which was not evidence. *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995). We note that Mr. Washington's aunt testified that the reason Mr. Washington was at her house that day was because he had asked her if he could have a present for his girlfriend delivered there. The trial judge was in the best position to evaluate her credibility as well as the credibility of the postal inspectors. *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. Upon review of the record, we cannot say that the court clearly lost its way when it determined that Mr. Washington knowingly possessed the cocaine contained in the package. Accordingly, we conclude that Mr. Washington's conviction for possession of drugs is not against the manifest weight of the evidence.

*State v. Washington*, 2018-Ohio-5271, 2018 WL 6829212, at ¶¶ 2, 4-7.

### b. Merits

Mr. Washington asserts that he placed the package in the bathtub because it was leaking (ECF Doc. 1-1, PageID#17), though this argument is not supported by the record. First, as Respondent contends, Mr. Washington did not testify at trial. (ECF Doc. 5, PageID#54). Moreover, as the Ohio Court of Appeals determined, this explanation was not evidence—rather, it was argument offered in his counsel's opening statement. *Washington*, 2018 WL 6829212, at ¶7.

Mr. Washington also disputes the credibility of law enforcement testimony, arguing that it was inconsistent and incredible as to whether his clothes were wet at the time of the arrest. (ECF Doc. 1-1, PageID#19-20). However, this argument fails because this court does not reweigh the credibility of witnesses. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), *cert. denied*, 562 U.S. 858 (2010) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)) (This court does "not reweigh the evidence, re-examine the credibility of witnesses, or substitute our judgment for that of the jury."). It is the province of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the evidence presented. *See, e.g., McKenzie v.*

19

*Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004). As the Supreme Court has held, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of the fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 7 (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Thus, this argument fails on federal habeas review.

Finally, there is sufficient evidence in the record to support that Mr. Washington had knowing possession of drugs. Mr. Washington's aunt testified that Mr. Washington arranged to be at her home to receive a package. (ECF Doc. 5-4, PageID#442-43, 446, 448). The postal inspector delivered the package, and Mr. Washington was informed that the parcel was for "A.Lee." (ECF Doc. 5-3, PageID#381-82, 386-87). Mr. Washington accepted and signed for the delivery of this package. (*Id.* at PageID#386-87). Shortly after signing for this package, Mr. Washington opened the package that contained a device alerting the narcotics officers. (*Id.* at PageID#389). After Mr. Washington opened the package, law enforcement searched his aunt's residence. (*Id.*). They found an opened package that was placed in the bathtub and contained four cocaine logs packaged in layers of spicy, mustardy liquid, assumedly to mask the odor of the cocaine. (ECF Doc. 5-4, PageID#498-99). And law enforcement testified that Mr. Washington had wet arms, hands, and clothing when he answered the door. (ECF Doc. 5-3, PageID#353, 391; ECF Doc. 5-4, PageID#498-99).

Based on the evidence stated above, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the facts in the record. *Jackson*, 443 U.S. at

319; *United States v. Craft*, 495 F.3d 259 (6th Cir. 2007). Moreover, circumstantial evidence alone is "sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Stewart v. Wolfenbarger*, 595 F.3d 647, 657 (6th Cir. 2010) (quoting *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).   Accordingly, Mr. Washington's Ground One claim lacks merit.

### 5. <u>Ground Three – Sufficiency of the Evidence (Major Drug Offender Specification)</u>

Mr. Washington asserts in his third ground for relief that his conviction and sentence is not supported by the evidence because the state failed to establish the weight of the substance. (*Id.* at PageID#22-24). He contends that the weight of the drugs varied at different points in the investigation in comparison to the federal search's stated weight of 601.5 grams. (*Id.* at PageID#23).   He maintains at the time of the arrest that the box contained multiple sealed, closed tubes - all of which contained a "substance of some form" - and that at some point these tubes before being combined weighed 512 grams. (*Id.* at PageID#24). He then asserts that the crime lab instructed law enforcement to mix all the tubes into one bag, which he alleges constituted mishandling of the evidence. (*Id.*). When this single bag reached the crime lab, it weighed 494 grams, which was 100 grams less than the weight identified in the federal search warrant (601.5 grams). (*Id.*).

Mr. Washington maintains that this alleged mishandling of evidence "artificially increased" the substance amount, resulting in a more serious conviction and a major drug offender sentencing enhancement. (*Id.*). He also argues that the mixing of individual packages resulted in the entire bulk amount of the combined packages being attributed to him, without any proof that the individual packages each contained the substance. (*Id.*). Thus, he contends that his conviction

for the major drug offender specification sentencing enhancement is not supported by sufficient evidence. (*Id.*).

### a. Ohio Court of Appeals' Findings

Here, the Ohio Court of Appeals rejected a similar argument that Mr. Washington raised in his manifest weight of the evidence claim:

> {¶8} Mr. Washington also argues that the court's finding that he was a major drug offender is against the manifest weight of the evidence. Section 2925.11(C)(4)(f) provides that, if the drug involved is cocaine and "equals or exceeds one hundred grams of cocaine, * * * the offender is a major drug offender * * *." Mr. Washington argues that the State did not prove beyond a reasonable doubt that the package had 100 grams of cocaine. He notes that, although the white powdery substance weighed 496 grams, it was a mixture of both cocaine and a cutting agent. He also notes that there was no testimony about the amount of actual cocaine within the mixture.

> {¶9} In *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, the Ohio Supreme Court explained that "fillers are an inherent part of powder cocaine." Id. at ¶ 12. "Accordingly, the total weight of the drug, including any fillers that are part of usable cocaine, should be weighed to determine the appropriate cocaine-possession penalty under [Section 2925.11(C)(4) ]." *Id.* Applying Gonzales to the facts of this case, we conclude that, because the white powdery substance containing cocaine that was recovered from the package delivered to Mr. Washington weighed more than 100 grams, Mr. Washington's conviction as a major drug offender is not against the manifest weight of the evidence. Mr. Washington's assignment of error is overruled.

*State v. Washington*, 2018-Ohio-5271, 2018 WL 6829212, at ¶¶8-9.

### b. Merits

Based on the Ohio Court of Appeals' determination, there is sufficient evidence that any rational juror could find Mr. Washington guilty of the major drug offender specification beyond a reasonable doubt. Here, the Ohio Court of Appeals interpreted and applied a prior Ohio Supreme Court decision (*State v. Gonzales*) to conclude that fillers may be included in calculating the total weight of the drug in determining the possession penalty under R.C. 2925.11(C)(4). Thus, because the white powdery substance containing cocaine recovered from the package exceeded more than

100 grams, the appellate court concluded that Mr. Washington's conviction as a major drug offender is not against the manifest weight of the evidence.

A review of the record evidence supports the appellate court's determination. The state submitted a laboratory report, to which Mr. Washington did not object, that indicated that cocaine in Mr. Washington's possession weighed approximately 494 grams. (ECF Doc. 5-4, PageID#476). Ms. Elizabeth Doyle, a Lorain County Drug Lab forensic drug analyst, testified that she tested the contents of the bag containing a white powdery substance obtained during the search. (*Id.*). This white powder tested positive for cocaine. (*Id.* at PageID#477). Ms. Doyle also testified that this substance also tested positive for Levamisole, a common adulterant in cocaine that is added to give more weight to cocaine. (*Id.*).

When weighing the substance, Ms. Doyle removed it from the bag, separated the powder from the packaging, and then weighed just the powder on the scale. (*Id.* at PageID#476). She stated that the white powdery substance weighed 494 grams, an amount that greatly exceeds the minimum amount of 100 grams that would qualify for a major drug offender specification under R.C. 2925.11(C)(4). (*Id.*). Based on the appellate court's interpretation of state law and additional evidence in the record, viewing this evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found beyond a reasonable doubt that Mr. Washington possessed 100 grams of cocaine for the major drug offender specification under R.C. 2925.11(C)(4).

Mr. Washington appears to contend that the 494 grams was not a reliable number because law enforcement allegedly mishandled the drugs in dispute. (ECF Doc. 1-1, PageID#22-23). Because of this alleged mishandling, he asserts that the amount of drugs resulted in an increased sentence. (*Id.*). However, Mr. Washington fails to point to any  evidence in the record to establish

mishandling. (*Id.* at PageID#23-24). Rather, the trial testimony suggests that the officers were preserving the cocaine, not mishandling it. Specifically, law enforcement discovered four logs of cocaine in Ziploc bags in the bathtub. (ECF Doc. 5-4, PageID#498). Each cocaine log was wrapped in Saran wrap and vacuum-sealed, with an additional layer of Saran wrap containing what appeared to be a mustardy, spicy wet rub. (*See id.* at PageID#498-99). The narcotics detectives dismantled the packaging of the cocaine logs. (*Id.* at PageID#499-500). Upon the advice of the Lorain County Crime Lab, the detectives emptied the contents of the four cocaine logs into one Ziploc bag to separate any moisture in the packaging from the actual cocaine. (*Id.* at PageID#501-02).

Although Mr. Washington disputes the credibility of his conviction because the drugs weighed less at the trial than when it arrived in government custody (*see* ECF Doc. 1-1, PageID#23-24), trial testimony reveals that Ms. Doyle's testimony effectively addressed this issue. She stated that, in her training and experience as a narcotics officer, the weight of cocaine logs prior to dismantling the package would be greater than after it was removed from the packaging. (ECF Doc. 5-4, PageID#505). Thus, Mr. Washington fails to demonstrate how this weight amount was unreliable.

Significantly, for a person to be convicted under the major drug offender specification, the substance must weigh at least ***100 grams***. R.C. § 2925.11(C)(4). Here, the weight at the crime lab was ***494 grams***, an amount substantially more in excess of the 100 grams required for a major drug offender specification under R.C. § 2925.11(C)(4). (ECF Doc. 5-4, PageID#476). Viewing the evidence in the light most favorable to the prosecution, any reasonable trier of fact could find that Mr. Washington was in possession of an amount of cocaine that equaled to or exceeded 100 grams beyond a reasonable doubt. Accordingly, I recommend that the Court deny this ground because it lacks merit.

24

**B.  *Ground Four: Prosecutorial Misconduct***

Mr. Washington's alleges in his fourth ground for relief that the government engaged in misconduct by allowing a detective to vouch for the credibility of Mr. Washington's aunt, Ms. Rogers. (ECF Doc. 1-1, PageID#24-25). Respondent argues that this claim is procedurally defaulted and meritless. (ECF Doc. 5, PageID#67-73). Mr. Washington failed to address Respondent's argument in his Traverse. (ECF Doc. 6, PageID#552-64).

### 1.  <u>Procedural Default</u>

As set forth above, the Supreme Court held in *Martinez* that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," provided that the relevant state law requires that "claims of ineffective assistance of trial counsel … be raised in [the] initial-review collateral proceeding." 566 U.S. 1, 9 (2012).

In *Gunner v. Welch*, the Sixth Circuit held that an Ohio habeas petitioner could assert as cause his direct appeal counsel's failure to advise him of the time limit for filing for post-conviction relief pursuant to R.C. § 2953.21. 749 F.3d 511, 515-16, 520 (6th Cir. 2014). There are two methods for raising ineffective assistance of trial counsel claims under Ohio law. One method is through direct appeal of ineffective assistance of trial counsel claims that involved evidence inside the record. *Id.* The other method is through a petition for post-conviction relief under R.C. § 2953.21 for ineffective assistance of trial counsel claims involving evidence outside the record. *Id.* The *Gunner* court held that appellate counsel's failure to inform the habeas petitioner of information concerning filing a post-conviction relief petition under R.C. § 2953.21 constituted sufficient cause to excuse petitioner's procedural default in federal habeas corpus. *Id.*

Here, Mr. Washington demonstrates sufficient cause to excuse procedural default of his Ground Four claim. Mr. Washington alleges that he received ineffective assistance of appellate counsel because his counsel did not inform him of the filing deadline of a post-conviction relief petition under R.C. § 2953.21. This failure to inform Mr. Washington prevented him from raising specific assignments of error regarding ineffective assistance of trial counsel that he now raises in the instant petition. Thus, this Report and Recommendation will proceed to addressing the merits of Mr. Washington's Ground Four claim.

## 2.  Merits

Mr. Washington's Ground Four claim lacks merit. A prosecutor may not express his personal opinion as to a witness's credibility, whether directly or through the testimony of law enforcement. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they may convey the impression that the prosecutor has evidence not presented to the jury that supports the charges against the defendant, and because the prosecutor's opinion could lead the jury to trust the government's judgment rather than its own. *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was expressing a personal belief regarding the witness's credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).

However, a habeas petitioner has a "high burden" to obtain relief based on an improper vouching claim, "particularly when the offending testimony comes not directly from the prosecutor but from a government witness." *Alexander v. Harris*, No. 1:19-CV-00234-SO, 2022 WL 993729, at *23 (N.D. Ohio Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 992009 (N.D. Ohio Mar. 31, 2022). Even if statements are improper, "the Sixth Circuit has recognized that

improper vouching is rarely sufficient to be afforded habeas relief." *Skidmore v. Kelly*, No. 4:11CV1760, 2012 WL 5197251, at *4 (N.D. Ohio Oct. 19, 2012) (citing *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) ("We have not discovered, nor have the parties directed us, to any cases in which we have granted habeas relief on the basis of improper vouching.")). Indeed, as the U.S. District Court for the Southern District of Ohio observed: "The Court has been unable to locate a single case decided by the Sixth Circuit Court of Appeals … where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Dorsey v. Banks*, 749 F. Supp. 2d 715, 757 (S.D. Ohio 2010).

Mr. Washington does not establish how the detective's statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). During the trial, the prosecutor asked Detective Thompson whether the testimony of Mr. Washington's aunt matched her testimony from her interview at the time of the investigation. (ECF Doc. 5-4, PageID#508-09). Detective Thompson replied:

> It was fairly close. She remembered more at the time as far as the details, as far as the time frames and things like that. But, yeah, she seemed to be very honest today about what happened that day.

(Tr. 188-89). Rather than expressing a personal opinion or relying on evidence outside the record, the trial testimony reveals that Detective Thompson merely stated that the testimony of Mr. Washington's aunt at the hearing was consistent with her testimony during the course of the investigation. Mr. Washington asserts, citing state case law, that the misconduct of the state in vouching for its own witness amounted to prosecutorial misconduct in violation of his constitutional rights. (ECF Doc. 1-1, PageID#24-25). But Washington fails to demonstrate that he suffered any prejudice and points to no binding decisions from the Supreme Court or the Sixth Circuit in support of such an argument. Detective Thompson's statement appears to be a single,

isolated remark; indeed, Mr. Washington points to no other instances of alleged improper vouching within the trial testimony. There is no evidence here that the prosecutor "express[ed] a personal belief in the witnesses' credibility or impl[ied] that the prosecutor had special knowledge of facts not before the jury." *Wilson v. Bell*, 368 F. App'x 627, 63-34 (6th Cir. 2010). Based on review of the record, I cannot conclude that this sole statement by a government witness—even assuming it was improper—"so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Therefore, Mr. Washington's Ground Four claim is meritless.

### C.  *Ground Two – Ineffective Assistance of Counsel*

Mr. Washington alleges in his second ground for relief that he received ineffective assistance of appellate counsel because his trial counsel (the counsel he retained for appellate proceedings) failed to advise him that he had a right to different counsel on appeal and failed to secure a waiver of his right. (*See* ECF Doc. 1-1, PageID#21-22). Additionally, Mr. Washington appears to allege as part of his Ground Three claim that his trial counsel was ineffective for failing to move for acquittal regarding his drug possession charge. (*Id.* at PageID#23). Mr. Washington further alleges in his Ground Four claim that trial counsel was ineffective for failing to raise a prosecutorial misconduct claim based on the alleged vouching by a detective. (*Id.* at PageID#24-25). Because Mr. Washington has intertwined multiple allegations of ineffective assistance of trial counsel throughout his habeas petition, this Report and Recommendation will address all ineffective assistance of trial counsel claims in its Ground Two analysis to assist with logical flow.

Mr. Washington raised these claims in his untimely 26(B) application, but he failed to appeal the Ohio Court of Appeals' ruling to the Ohio Supreme Court.

### 1.  <u>Procedural Default</u>

### a.  Parties' Arguments

Respondent contends that Mr. Washington's ineffective assistance of counsel claims (*i.e.* his trial counsel failed to advise him that he had a right to a different counsel on appeal; failed to secure a waiver of this right; and failed to move for acquittal regarding his drug possession charge) are procedurally defaulted. (ECF Doc. 5, PageID#59-64). Specifically, Respondent argues that the appropriate forum to raise claims of ineffective assistance of trial counsel is a post-conviction action. (*Id.* at PageID#59-60). Here, Respondent states that Mr. Washington filed a post-conviction relief petition alleging two claims of ineffective assistance of trial counsel: (1) failure to investigate the IP address used to track the cocaine package; and (2) failure to conduct an independent analysis of the drug contents. (*Id.* at PageID#60 (citing ECF Doc. 5-2, PageID#214)). Respondent contends that Mr. Washington failed to raise his current ineffective assistance of trial counsel allegations (*i.e.,* that trial counsel was ineffective for failing to advise him of a right to new counsel on appeal and for failing to file an acquittal motion regarding the drug possession charge) in his post-conviction relief petition. (*Id.*). Because a post-conviction relief petition would now be considered untimely and Mr. Washington can meet no statutory exceptions for filing an untimely and successive petition, exhaustion would be futile. (*See id.* at PageID#60-61). Finally, assuming *arguendo* that Mr. Washington could present his ineffective assistance of counsel claims in a 26(B) application, Respondent argues that these claims would still be procedurally defaulted because his 26(B) application was untimely. (*Id.* at PageID#62-64).

### b.  Analysis

It is undisputed that Mr. Washington's Ground Two claim is procedurally defaulted. Thus, the question that remains is whether Mr. Washington can demonstrate cause to excuse his procedural default by asserting ineffective assistance of counsel. Like Ground Four, Mr.

Washington presents sufficient cause to excuse his procedural default. Mr. Washington alleges that he received ineffective assistance of appellate counsel because his counsel did not inform him of the filing deadline of a post-conviction relief petition under R.C. § 2953.21. This failure to inform Mr. Washington prevented him from raising specific assignments of error regarding ineffective assistance of trial counsel that he now raises in the instant petition. Thus, this Report and Recommendation will proceed to addressing the merits of Mr. Washington's Ground Two claim.

## 2.  Merits

Mr. Washington fails to demonstrate prejudice to support his Ground Two claim. Mr. Washington appears to assert prejudice by pointing to his trial counsel's continued representation of him during direct appeal. But the Sixth Circuit has refuted the contention that there is *per se* prejudice due to the alleged conflict of interest arising from counsel's representation of a petitioner at the trial and on appeal. Specifically, in *Whiting v. Burt*, the Sixth Circuit held:

> The *Sullivan* standard has been applied by the Supreme Court only in cases, like those involving multiple concurrent representation, where: (1) prejudice was obvious, e.g., a denial of the assistance of counsel, or where there was a 'high probability of prejudice;' and (2) it was difficult to prove that prejudice. Neither of these factors has any application to the rather common occurrence of trial counsel also acting as counsel on direct appeal. That situation, in itself, *does not create any obvious prejudice*. Furthermore, there is no comparable difficulty in proving whether counsel was ineffective at the appellate level for failing to raise an ineffective assistance of trial counsel claim.

*Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005) (emphasis added).[3] *See also Diaz v. Howes*, No. 1:09-CV-61O, 2015 WL 869174, at *22 (W.D. Mich. Feb. 27, 2015).

---

[3] In reaching this determination, the Sixth Circuit determined that retaining the trial counsel to pursue an appeal was the norm, observing that "the rules of this Court provide that trial counsel in criminal cases, whether retained or appointed by the district court, is responsible for the continued representation of the client on appeal unless specifically relieved by this Court. 6 Cir. R. 101(a)." *Whiting*, 395 F.3d at 619, n. 10.

He further fails to demonstrate prejudice because he does not demonstrate that any of the underlying claims are meritorious. Here, as discussed in the merits analysis of Grounds One and Three, Mr. Washington did not establish that there was insufficient evidence in the record to support his conviction. Moreover, the Ohio Court of Appeals determined that Mr. Washington's convictions with respect to possession of drugs and its related major drug offender specification were supported by the manifest weight of the evidence. *State v. Washington*, 2018-Ohio-5271, at ¶¶ 4-9. A finding that a conviction is not against the manifest weight of the evidence necessarily implies that there was sufficient evidence to support a conviction. *See Sweeney v. Gansheimer*, No. 1:09CV2377, 2010 WL 4955706, at *8 (N.D. Ohio Sept. 14, 2010), *report and recommendation adopted*, 2010 WL 4955704 (N.D. Ohio Nov. 30, 2010). Because Mr. Washington failed to establish that his convictions were not supported by sufficient evidence, Mr. Washington similarly fails to establish prejudice with respect to trial counsel's failure to move for acquittal on his possession charge or to argue that there was insufficient evidence to support the possession conviction. *See, e.g.*, *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.") (further citation omitted).

Additionally, although Mr. Washington alleges that trial counsel was ineffective for failing to raise an improper vouching objection, claim lacks merit for the reasons previously set forth in this Report and Recommendation. Because the underlying legal claim lacks merit, the failure of Mr. Washington's counsel to raise that claim does not constitute ineffective assistance of counsel. *See, e.g.*, *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Finally, Mr. Washington attempts to demonstrate prejudice by arguing that his counsel on direct appeal "merely" challenged the major drug offender specification as being against the manifest weight of the evidence and not the underlying charge. (*See* ECF Doc. 1-1, PageID#22). But this assertion misstates the actions of Mr. Washington's appellate counsel. As Respondent properly points out, Mr. Washington's appellate counsel did challenge Mr. Washington's possession of drugs conviction under the manifest weight of the evidence standard. (ECF Doc. 5-2, PageID#148-49). And as stated above, Mr. Washington fails to establish that there was a lack of sufficient evidence supporting his convictions.

Thus, because Mr. Washington failed to establish that his counsel's continued representation of him during direct appeal prejudiced him and that any of the ineffective assistance of counsel claims raised in this petition are meritorious, I recommend that the Court find Mr. Washington's Ground Two claim (and his additional ineffective assistance of counsel claims asserted elsewhere in his petition) lacks merit.

## VII. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts

that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

## B.  Analysis

Mr. Washington will not be able to show that the Court's ruling is debatable among jurists of reason because his claims are noncognizable, procedurally defaulted, and/or meritless. Because jurists of reason would not find this conclusion to be debatable, I RECOMMEND that no Certificate of Appealability issue in this case.

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

## VIII.   OVERALL RECOMMENDATION

Because Mr. Washington has presented either noncognizable and/or meritless claims, I RECOMMEND that the Court DISMISS and/or DENY his Petition for Writ of Habeas Corpus

34

under 28 U.S.C. § 2254 and not grant him a certificate of Appealability. I also RECOMMEND

that Jennifer Black, the current Warden of Lorain Correctional Institution—where Mr. Washington

is currently incarcerated—should be substituted for Kimberly Clipper as the Respondent in this

case.

Dated: May 19, 2023                          *s/ Jennifer Dowdell Armstrong*
                                             Jennifer Dowdell Armstrong
                                             U.S. Magistrate Judge

### IX.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings,
> recommendations or report made pursuant to Fed. R. Civ. P. 72(b)
> within fourteen (14) days after being served with a copy thereof, and
> failure to file timely objections within the fourteen (14) day period
> shall constitute a waiver of subsequent review, absent a showing of
> good cause for such failure**. Such party shall file with the Clerk of Court,
> and serve on the Magistrate Judge and all parties, written objections which
> shall specifically identify the portions of the proposed findings,
> recommendations, or report to which objection is made and the basis for
> such objections. **Any party may respond to another party's objections
> within fourteen (14) days after being served with a copy thereof.** The
> District Judge to whom the case was assigned shall make a de novo
> determination of those portions of the report or specified proposed findings
> or recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> Magistrate Judge. The District Judge need conduct a new hearing only in
> such District Judge's discretion or where required by law, and may
> consider the record developed before the Magistrate Judge, making a
> determination on the basis of the record. The District Judge may also
> receive further evidence, recall witnesses or recommit the matter to the
> Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the

District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).

Objections must be specific and not merely indicate a general objection to the entirety of the

report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).